IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                              :
JOSEPH BACON a/k/a JOEL BACON, :    HON. JEROME B. SIMANDLE
                              :
                  Plaintiff,  :    Civil No. 10-5484 (JBS/JS)
                              :
        v.                    :
                              :         OPINION
DR. ELIZABETH BURNS, et al.,  :
                              :
                  Defendants. :
                              :
```

APPEARANCES:

Joel Jermaine Bacon, pro se
NJ Department of Human Services
Division of Mental Health
Ancora Psychiatric Hospital
301 Spring Garden Road
Hammonton, NJ 08037

David L. DaCosta, Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
Department of Law and Public Safety
25 Market Street
P.O. Box 112
Trenton, NJ 08625

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

This matter is before the Court on the motion of the
Defendants Dr. Elizabeth Burns and Dr. Louis Becker
("Defendants") for summary judgment in lieu of an answer.
[Docket Item 13.]  For the reasons set forth below, the Court
will grant in part and deny in part the Defendants' motion for
summary judgment.

## II.   BACKGROUND

Plaintiff is a civilly committed individual and brings the instant action pursuant to 42 U.S.C. § 1983.  [Docket Item 1.] The Plaintiff asserts that his due process rights have been being violated by involuntary injections of medication(s) prescribed to him by Defendants.

On June 1, 2009, the Plaintiff was transferred from Ann Klein Forensic Center to Ancora Psychiatric Hospital in Hammonton, New Jersey.  (Certification of Dr. Elizabeth Burns ("Burns Cert.") ¶ 3.)  Defendant Dr. Elizabeth Burns ("Dr. Burns" or "Defendant Burns") was the treating psychiatrist for the Plaintiff at Ancora Psychiatric Hospital from September 22, 2009 to January 13, 2010.  (Burns Cert. ¶ 2.)  Dr. Burns diagnosed the Plaintiff with Schizoaffective Disorder Bipolar Type, a major mental illness. (Burns Cert. ¶ 4 and Ex. B.)

Shortly after Dr. Burns began treating the Plaintiff, Dr. Burns prescribed several medications, including Haldol, for his psychiatric disorder.  (Burns Cert. ¶ 5.)  Dr. Burns explained the risks and benefits of the medications to the Plaintiff and the Plaintiff signed an informed consent form agreeing to take them on October 29, 2009.  (Burns Cert. ¶ 5 and Ex. C.)

On or about November 5, 2009, the Plaintiff started to refuse to take one of his medications, Haldol. (Burns Cert. ¶ 6.) The Plaintiff stated he did not need the medication because he

2

was not psychotic.  (Burns Cert. ¶ 6.)  After stopping the Haldol medication, the Plaintiff's behavior began to deteriorate and the Plaintiff began making threats to staff and other patients, making several unfounded calls to Human Services Police and 911, making threats to harm himself and others, and having disorganized thought processes and sexual preoccupation.  (Burns Cert. ¶ 6 and Ex. D.) The Plaintiff also ceased taking other medication in addition to refusing Haldol.  (Burns Cert. ¶ 6.)

On November 30, 2009, and December 3, 2009, Dr. Burns evaluated the Plaintiff and concluded that there was no other option but to administer the medication, including Haldol, against the Plaintiff's will.  (Burns Cert. ¶ 7.)  Dr. Burns concluded in her professional opinion that the prescribed medications, including Haldol, were a necessary part of the Plaintiff's treatment plan.  (Burns Cert. ¶ 8.)  Dr. Burns also concluded that the Plaintiff posed a danger to himself and others without the medication.  (Burns Cert. ¶ 8.)  Dr. Burns discussed her opinion with the Plaintiff but the Plaintiff continued to refuse to take the prescribed medication.  (Burns Cert. ¶ 8.)

On December 3, 2009, Dr. Burns initiated the Three Step Process followed by Ancora Psychiatric Hospital in accordance with New Jersey Administrative Bulletin 5:04 for administering psychotropic medication to a non-consenting patient. (Burns Cert. ¶ 9.)  Dr. Burns certified that the Plaintiff would harm himself

or others without the medication, that she anticipated the Plaintiff would improve with the medication and that the Plaintiff was refusing to take the medication.  (Burns Cert. ¶ 9 and Ex. F.)

The second step of the process involved a meeting with the Plaintiff's treatment team to discuss Dr. Burns' recommendation that the Plaintiff's medication be administered without the Plaintiff's consent.  (Burns Cert. ¶ 10.)  Dr. Burns met with the Plaintiff's treatment team in accordance with Step Two.  (Burns Cert. ¶ 10.)  The Plaintiff's treatment team included Dr. Burns, his program coordinator, his nurse, and his social worker.  The treatment team agreed with Dr. Burns' recommendation and concluded that the medication was a necessary part of the Plaintiff's treatment plan.  (Burns Cert. ¶ 10 and Ex. F.)

The Third Step of the procedure required the Acting Medical Director to review the Plaintiff's chart and determine whether he agreed that the medication, including Haldol, was a necessary part of the Plaintiff's treatment plan.  Dr. Burns informed the Office of the Acting Medical Director/Chief of Psychiatry to request this third step review.  (Burns Cert. ¶ 11.)  Dr. Babatudnde Adetunji was assigned as the designee of the Acting Medical Director in the absence of Dr. David Roat, Acting Medical Director.  (Certification of Dr. Babtudnde Adetunji ("Adetunji Cert.") ¶ 2).

Dr. Adetunji personally examined the Plaintiff and reviewed his chart to determine whether he agreed with Dr. Burns' recommendation that the pyschotropic medication was a necessary part of the Plaintiff's treatment plan. (Adetunji Cert. ¶ 3.) Dr. Adetunji agreed with Dr. Burns that the medication was necessary and should be administered over the Plaintiff's objection in order to stabilize the Plaintiff's mental status. (Adetunji Cert. ¶ 4 and Ex. F.)

After the three step procedure was completed, Dr. Burns informed the Plaintiff of the results. (Burns Cert. ¶ 12.) The Plaintiff then informed Dr. Burns that he was allergic to Haldol. (Burns Cert. ¶ 12.) However, the Plaintiff had been taking Haldol by consent from October 29, 2009 until November 5, 2009, and he did not have any allergic reaction to the medication. (Burns Cert. ¶ 12.)

The Plaintiff's file was then sent to a Rennie Advocate, Mr. Anthony Haynes, on December 3, 2009, for review. (Burns Cert. ¶ 13.) In his capacity as a Rennie Advocate, Mr. Haynes ensures that the Three Step Procedure specified in New Jersey Administrative Bulletin 5:04 for the involuntary administration of medication to psychiatric patients is complied with. (Certification of Anthony Haynes ("Haynes Cert.") ¶ 2.) In order to determine if the three step process was followed, Mr. Haynes reviews the patient's chart and speaks with the patient to find

out why he is refusing the medication.  (Haynes Cert. ¶ 7.)
After conducting his review of the Plaintiff's file and speaking
with the Plaintiff, Mr. Haynes concluded that all the appropriate
procedures had been followed and he had no reason to request an
independent review to question the decision of the treating
physicians to forcibly medicate the Plaintiff.  (Haynes Cert. ¶ 7
and Ex. H.)  Also during his patient interview, Mr. Haynes
observed the Plaintiff for extra pyramidal side effects and did
not note any.  (Ex. H.)  Mr. Haynes also indicated that the
Plaintiff was not complaining of any side effects as a result of
the forcible administration of the medication, including Haldol.
(Ex. H.)

     In addition to the three step process and review by the
Rennie Advocate, Dr. Burns' decision to medicate the Plaintiff
without his consent was reviewed an additional time by Dr. David
Roat, the Acting Medical Director at Ancora Psychiatric Hospital,
on December 7, 2009.  (Certification of Dr. David Roat ("Roat
Cert.") ¶¶ 1-2.)  Dr. Roat personally examined the Plaintiff,
reviewed his chart, and had a lengthy discussion with Dr. Burns
following the resumption of the administration of psychotropic
medication.  (Roat Cert. ¶ 3.)

     Dr. Roat reviewed the Plaintiff's chart which showed that
the Plaintiff's behavior while on refusing status consisted of
paranoia, sexually inappropriate behavior, calling 911 and

threatening the staff.  (Roat Cert. ¶ 5 and Ex. I p. 2.)  Dr.
Roat then interviewed the Plaintiff.  During this interview, the
Plaintiff told Dr. Roat that he did not want to take Haldol
because he was allergic to it and Haldol caused him to be unable
to eat due to nausea and that his eyes have been rolling back in
his head.  (Roat Cert. ¶ 6.)  Dr. Roat found these claims
unsubstantiated because there were no corresponding signs or
evidence of adverse side effects.  (Roat Cert. ¶ 6 and Ex. I p.
4.)

Based on his review of the Plaintiff's chart, interview with
the Plaintiff and all available information, Dr. Roat concluded
that the Plaintiff made progress on the medication, the
medication improved his mental condition and that the medication
did not cause him physical harm. (Roat Cert. ¶ 7 and Ex. I pp. 4-
5.)

On January 13, 2010, the Plaintiff's medications were
changed but the Plaintiff remained unpredictably assaultive,
drowsy and unintelligible. (Adetunji Cert. ¶ 6 and Ex. G.)  The
Plaintiff then resumed other psychotropic medication including
Haldol, Klonopin, Vistaril, and Lithium.  The Plaintiff became
sedated and groggy and his speech became unintelligible.
(Adetunji Cert. ¶ 6 and Ex. G.)  The Plaintiff was then
transferred back to Ann Klein Forensic Center because of the
difficulty in managing the Plaintiff safely in Ancora Psychiatric

Hospital, as it is a less secure facility.  (Ex. G. p. 4.)

The Plaintiff then filed the instant action on October 22, 2010 pursuant to 42 U.S.C. § 1983.  [Docket Item 1.]  The Plaintiff alleged that the Defendants Dr. Burns, Dr. Becker, Social Workers Gwendolyn Goodwin and Nick McDonald, and Team Leader Greg Lock collectively violated his constitutional rights by involuntarily injecting him with antipsychotic medication to which he was allergic.  The Plaintiff also alleges that the Defendants did not follow the proper three step procedure required by New Jersey Administrative Bulletin 5:04.  The Plaintiff alleges in his complaint that the decision to forcibly medicate him was not reviewed by the medical director or the Rennie Advocate. [Docket Item 1.]

After conducting a sua sponte screening of the Plaintiff's complaint , the Court dismissed with prejudice Defendants Gwendolyn Goodwin, Nick McDonald, and Greg Lock.  As to Defendants Gwendolyn Goodwin and Nick McDonald, the Court held that it was facially evident that these social workers did not have the required capacity to prescribe the Plaintiff the challenged involuntary medication because they were not medical practitioners and had no authority to prescribe medication.  Therefore, the Plaintiff's complaint failed to state a claim with regard to these defendants.  As to Defendant Greg Lock, the Court held that the allegations against Lock were based solely on the

8

doctrine of <u>respondeat</u> <u>superior</u> and lacked any facts of personal involvement.  Therefore, the Plaintiff's complaint was insufficient to state a claim against Mr. Lock. [Docket Item 3 ¶ 3.]

However, the Court allowed the Plaintiff's complaint to proceed against Dr. Burns and Defendant Dr. Louis Becker. [Docket Item 3.]

On April 13, 2011, in lieu of an answer and prior to the parties conducting discovery, Defendants filed the instant motion for summary judgment. [Docket Item 13.]

The Defendants Dr. Becker and Dr. Burns jointly seek to dismiss the Plaintiff's complaint.  The Defendants have supported their motion for summary judgment with several exhibits and certifications.  The Defendants argue that all the evidence supports that the three step procedure prescribed in New Jersey Administrative Bulletin 5:04 was followed in this case and that the Plaintiff's constitutional rights were protected.  Defendant Becker further argues that the complaint should be dismissed against him because as a psychologist, under the law of the State of New Jersey, he has no authority to prescribe medication and did not do so in this case.

The Plaintiff has refused the pro bono counsel appointed for him and has not submitted an opposition to this motion.  [Docket Item 23.]  The Plaintiff has presented no evidence to the Court

to refute the numerous exhibits and certifications presented by the Defendants.

III.  **DISCUSSION**

    **A.  Standard of Review**

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact. Fed. R. Civ. P. 56(c)(1)(A); <u>United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999).

    **B.  Analysis**

        <u>1. Dr. Louis Becker</u>

    Plaintiff's allegations against Dr. Louis Becker will be

10

dismissed with prejudice, since it is facially evident that Dr. Becker was not authorized to prescribe medication to the Plaintiff and that Dr. Becker did not do so.

Under N.J.A.C. 13:42-1.1, licensed psychologists are not permitted to prescribe or administer medication to patients.[1]  It

---

[1] N.J.A.C. 13:42-1.1 provides:

(a) The scope of practice of a licensed psychologist includes, but is not limited to, the use or advertisement of the use of theories, principles, procedures, techniques or devices of psychology, whether or not for a fee or other recompense. Psychological services include, but are not limited to:

1. Psychological assessment of a person or group including, but not limited to: administration or interpretation of psychological tests and devices for the purpose of educational placement, job placement, job suitability, personality evaluation, intelligence, psychodiagnosis, treatment planning and disposition; career and vocational planning and development; personal development; management development; institutional placements; and assessments in connection with legal proceedings and the actions of governmental agencies including, but not limited to, cases involving education, divorce, child custody, disability issues and criminal matters;

2. Psychological intervention or consultation in the form of verbal, behavioral or written interaction to promote optimal development or growth or to ameliorate personality disturbances or maladjustments of an individual or group. Psychological intervention includes, but is not limited to, individual, couples, group and family psychotherapy, and psychological consultation includes consultation to or for private individuals, groups and organizations and to or for governmental agencies, police and any level of the judicial system;

3. Use of psychological principles, which are operating assumptions derived from the theories of psychology that include, but are not limited to: personality, motivation, learning and behavior systems, psychophysiological psychology including biofeedback, neuropsychology, cognitive psychology and psychological measurement; and

is undisputed that Dr. Becker is a licensed psychologist in the State of New Jersey. (Certification of Louis Becker, Psy.d., M.S.W., ¶ 4.) As a result, Dr. Becker is without authority to prescribe medication and therefore cannot be liable to the Plaintiff for involuntarily prescribing and administering the challenged medications.

Therefore, the Defendant's motion for summary judgment with regard to Dr. Louis Becker will be granted.

### 2. Dr. Elizabeth Burns

It is undisputed that Dr. Elizabeth Burns, D.O. ("Defendant" or "Dr. Burns"), was licensed to prescribe medications to patients and did have the authority to prescribe and administer Plaintiff's medication. It is also undisputed that Dr. Burns did forcibly medicate the Plaintiff with pyschotropic medication against his will. The main issue before the Court is whether there is evidence from which a reasonable jury could find that the Defendant violated the Plaintiff's constitutional rights when administering this medication absent the Plaintiff's consent.

It is well established that involuntarily committed mentally ill patients have a constitutional right under the Due Process Clause of the 14th Amendment to refuse the administration of

---

4. Use of psychological procedures, which are applications employing the principles of psychology and associated techniques, instruments and devices. These procedures include, but are not limited to, psychological interviews, counseling, psychotherapy, hypnotherapy, biofeedback, and psychological assessments.

antipsychotic drugs.  White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  This right "is derived from each person's fundamental right to be free from unjustified intrusions on personal security."  Id.

However, this right is not absolute.  The state has a strong interest "in protecting society against those who are dangerous to themselves or others" and also has a strong interest in "protecting a citizen's interests when the citizen is incapable of protecting those interests himself."  Id.

In analyzing whether the forcible admission of anti-psychotic medication violates an individual's constitutional rights, the Third Circuit has adopted a standard to balance the individual's personal security interests against the State's interest in protecting its citizens and society.  Importantly, "authorities may administer anti-psychotic drugs to an unwilling patient only where the decision is a product of the authorities' professional judgment." Id.  In addition, "a decision of the institution's staff is presumed valid unless it is shown to be a substantial departure from accepted professional judgment, practice or standards." Id.

In Rennie v. Klein, the Third Circuit addressed whether doctors at a New Jersey institution violated an involuntarily committed patient's constitutional rights by forcibly administering antipsychotic medication.  The Court first held:

13

> antipsychotic drugs may be constitutionally administered
> to an involuntarily committed mentally ill patient
> whenever, in the exercise of professional judgment, such
> an action is deemed necessary to prevent the patient from
> endangering himself or others.  Once that determination
> is made, professional judgment must also be exercised in
> the resulting decision to administer medication.

Rennie v. Klein, 720 F.2d 266, 269 (3d Cir. 1983).  The Court

then addressed whether the New Jersey procedures provided in

Administrative Bulletin 78-3 satisfied due process requirements.

Id. at 270.  Administrative Bulletin 78-3 articulated a three-

step procedure which was required to be followed prior to the

forcible administration of antipsychotic medication.  First, the

attending physician must explain his or her reason for

prescribing the medication and must discuss the drugs' benefits

and risks. Second, the patient was encouraged to seek outside

advice from family and friends and a required meeting was then

held with a treatment team if the patient still refused the

medication.  The third and final step was an independent review

by the medical director, whose concurrence is required before any

medication was administered.  Id. at 270 n.9.

The Court in Rennie held that Administrative Bulletin 78-3

satisfied due process requirements.  Id. at 270.  Since the

medical professionals followed the procedure outlined in

Administrative Bulletin 78-3, the decision to forcibly administer

antipsychotic medication to the patient was deemed a product of

the authorities' professional judgment and therefore did not

14

violate the Plaintiff's constitutional due process rights.  Id.

Since the Rennie decision, Administrative Bulletin 78-3 has been redesignated as Administrative Bulletin 5:04.  See N.J.A.B. 5:04 (Certification of David L. DaCosta, Ex. J (hereinafter "Ex. J.")).  The three step procedure approved by the Third Circuit in Rennie remains the same under N.J.A.B. 5:04 as it was under Administrative Bulletin 78-3.

Therefore, the issue before this court is not whether N.J.A.B. 5:04 satisfies the requirements of due process, as the Third Circuit has already ruled that these procedures are constitutional.  Instead, the question before this court is the narrow  issue of whether the Defendant, Dr. Burns, followed the procedures prescribed under N.J.A.B. 5:04.

As discussed above, three steps are required under N.J.A.B. 5:04 when a patient refuses to take psychotropic medication.  All three steps must be documented in the Three Step Form. (Ex. J at 8.)

First, the treating physician must meet with the patient to discuss and attempt to respond to the patient's concerns about the medication. (Ex. J. at 7).  If the patient still refuses to take the medication and the treating physician believes the medication is a necessary part of the patient's treatment plan, the treating physician must tell the patient that the matter will be discussed at a meeting of the patient's treatment team and

15

shall invite the patient to attend.  In addition, the treating physician should encourage the patient to discuss the matter with a person of his own choosing and shall advise the patient that a Rennie advocate is available to provide assistance.  (Ex. J at 7.)

The second step under N.J.A.B. 5:04 is a treatment team meeting to discuss the treating physician's determination and recommendations and the patient's response.  If the patient is present at the meeting, the team shall attempt to devise a treatment plan that is acceptable to both the patient and the team.  Otherwise, if the patient is not present, the team and the physician should discuss the physician's recommendation and the patient's response and document their conclusions in the patient's chart.  (Ex. J at 7.)

The third step under N.J.A.B. 5:04 is a Medical Director meeting with the patient.  If, after step two, the treating physician still maintains that the medication is a necessary part of the patient's treatment plan and the patient still refuses to take the medication, the Medical Director will then conduct a personal examination of the patient and a review of the patient's chart.  (Ex. J at 8.)  If the Medical Director agrees with the treating physician that the medication is a necessary part of the patient's treatment plan, the medication may then be administered to the patient without the patient's consent.  (Ex. J at 8.) An

16

Acting Medical Director may perform the third step of this process in the absence of the Medical Director. (Ex. J at 6.)

After these three steps are completed, a copy of the Three Step Form is given to the Rennie Advocate who personally reviews the treatment plan as soon as the form is received.  The Rennie Advocate continues to review the forcible administration of medication on the patient once every month thereafter and completes a Medication Review Form.  (Ex. J at 9.)

In this case, there is a genuine issue of material fact as to whether Dr. Burns complied with N.J.A.B. 5:04.  The record is clear that Dr. Burns, the Plaintiff's treating physician, began completion of the first step by determining that Haldol was a necessary part of the Plaintiff's treatment plan (Burns Cert. at ¶¶ 7-8, Ex. E).  After the Plaintiff stopped taking his Haldol medication, Dr. Burns evaluated the Plaintiff and met with him to discuss his refusal to take Haldol.  Dr. Burns explained to him that the medication was necessary because he posed a danger to himself and others without the medication.  (Burns Cert. at ¶¶ 7-8, Ex. E).

However, Dr. Burns was then required to inform the Plaintiff that a team meeting would take place and was required to invite the Plaintiff to attend.  There is no evidence in the record that this occurred.  The treating physician is also required pursuant to N.J.A.B 5:04 to encourage the patient to discuss the matter

17

with an outside individual, such as a family member or a friend, and advise the patient that a Rennie advocate is available to provide assistance.  Apparently, one of these steps was taken here, so far as the present record reveals.  In fact, all three steps of the three step process occurred on December 3, 2009. This means the Plaintiff had limited if any time to reach out to a family member or friend or seek assistance from the Rennie advocate prior to the team meeting.  Furthermore, the Three Step form does not indicate whether the Plaintiff was even present at the team meeting.  Upon the present record, a reasonable jury could find that Dr. Burns failed to follow these steps, or their substantial equivalent, and that Plaintiff's due process right was violated.

Consequently, there is a genuine issue of material fact as to whether Dr. Burns substantially followed the first step of the three step process required under N.J.A.B. 5:04.  Therefore, summary judgment is inappropriate.  It remains to be determined at trial whether Plaintiff will prove that Dr. Burns violated his right to refuse medication.[2]

_____

[2]  If Defendant Burns is able to supply evidence of compliance with N.J.A.B. 5:04 with regard to inviting Plaintiff to attend the team meeting and encouraging him to have discussions with outside family or friends or with the Rennie advocate, then Dr. Burns may renew her motion for summary judgment.  Similarly, if Defendant concedes these steps were omitted but that the precautions that were taken were the substantial equivalent complying with the demands of due process, then she may likewise renew her motion for summary judgment, as

18

### 3. Is Dr. Burns entitled to qualified immunity?

As an "accommodation of competing values," qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where a governmental defendant was "plainly incompetent or . . . knowingly violate[d] the law," while immunizing a state officer who "made a reasonable mistake about the legal constraints on his actions." <u>Curley v. Klem</u>, 499 F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and citations omitted).

The Court's assessment of whether a defendant is entitled to qualified immunity hinges on two considerations.  The Court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." <u>Id.</u> (citation omitted).  If the Plaintiff has sufficiently alleged such a deprivation, the Court must address "whether the right that was [allegedly] violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> (internal quotations and citations omitted).

In this case, the Plaintiff has alleged a deprivation of constitutional right by claiming that the three step procedure prescribed by N.J.A.B. 5:04 was not properly followed by Dr.

---

this point has not been squarely posited and is not decided in the present motion.

Burns prior to forcibly administering antipsychotic medication to the Plaintiff.  As discussed supra, there is a genuine issue of material fact as to whether Dr. Burns informed the Plaintiff that a team meeting discussing the forcible administration of medication would take place, whether the Plaintiff was encouraged to consult family, friends or the Rennie advocate, and whether the Plaintiff was even present at the team meeting.

The right of the Plaintiff to be informed of the team meeting, have the opportunity to discuss his concerns with family, friends and the Rennie advocate prior to the team meeting, and have the choice whether to attend the team meeting are all clearly established rights.  These procedural safeguards were discussed by the Third Circuit in Rennie v. Klein, 720 F.2d 266, 270 n.9 (3d Cir. 1983), as necessary for the protection of an involuntarily committed mental patient's due process right to refuse treatment.  These procedural steps are also clearly and unequivocally prescribed in N.J.A.B. 5:04.

Therefore, since the Plaintiff has alleged a violation of a constitutional right and a physician in Dr. Burns' position would reasonably have known that this right was established by case law and regulation, Dr. Burns is not entitled to qualified immunity.  Accordingly, summary judgment will be denied.

**IV.   CONCLUSION**

The Defendants' motion for summary judgment is granted in part and denied in part.  Defendant Dr. Louis Becker, as a psychologist under the laws of the State of New Jersey, did not have the authority to prescribe or administer medication to the Plaintiff.  Therefore, the Plaintiff's complaint fails to state claim against Dr. Becker as he did not have the required capacity to commit the alleged violations of Plaintiff's constitutional rights.

As to Dr. Burns, there is a genuine issue of material fact as to whether the three step process required under N.J.A.B. 5:04 was properly followed.  There is no evidence in the record that Dr. Burns informed the Plaintiff that a team meeting would take place, encouraged the Plaintiff to seek counsel from friends or family members or advised the Plaintiff that a Rennie advocate was available to assist him.

In addition, Dr. Burns is not entitled to qualified immunity since the alleged violation of Plaintiff's due process rights were clearly established by case law and regulation, if Plaintiff proves that the steps required by <u>Rennie</u> and the regulations were not followed prior to involuntary administration of pyschotropic medication.

Therefore, summary judgment with regard to Dr. Burns is inappropriate and the Defendants' motion will be denied.

The accompanying Order will be entered.

**November 15, 2011**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge